CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 04 2019

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:06CR00002 |
| | ) | (Civil Action No. 7:18CV81336) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| HARVEY LEE HAYES, JR., | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Senior United States District Judge |

Harvey Lee Hayes, Jr., through counsel, has filed an amended motion to vacate his federal conviction under 28 U.S.C. § 2255. The matter is presently before the court on the threshold issue of whether the motion is successive for purposes of § 2255(h). The issue has been fully briefed and is ripe for decision. For the reasons that follow, the court concludes that the motion is successive and that it must be dismissed without prejudice for lack of jurisdiction.

### Background

Hayes was indicted by a federal grand jury in the Western District of Virginia on January 19, 2006. Count One of the indictment charged him with possession of a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Hayes entered a plea of guilty to that count on July 7, 2006. Under the terms of the written plea agreement, Hayes acknowledged that he would be subject to an enhanced mandatory minimum term of imprisonment of fifteen years under the Armed Career Criminal Act, 18 U.S.C. § 924(e).

During the guilty plea hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, an Assistant United States Attorney was called upon to offer evidence in

support of the defendant's plea of guilty. Proceeding by proffer, the prosecutor summarized the government's evidence as follows:

> [T]he events that led to this charge took place on the 6th of December, 2005, in the town of Vinton, in the Western District of Virginia.
>
> That night, Officer [Craig] Frye, of the Vinton Police Department, was on patrol in what is known as a high-crime area of the town. He observed Mr. Hayes seated in a vehicle. He walked up to the vehicle, just to see what was going on, spoke to Mr. Hayes, [and] eventually asked Mr. Hayes for consent to pat him down.
>
> Mr. Hayes stepped out of the vehicle at some point during that and in fact did consent to being patted down. Almost immediately the officer felt a pistol in Mr. Hayes' pocket. He asked Mr. Hayes about it, after it had been removed. Mr. Hayes said he had been in a dispute earlier, where he had been punched, and had the pistol for his protection.
>
> Mr. Hayes is indeed a felon who had not received clemency. It was a firearm that was found in Mr. Hayes' pocket, designed to expel a projectile by means of explosion, and that firearm had moved in interstate or foreign commerce. And this is Mr. Hayes.

Plea Hr'g Tr. 29–30, Docket No. 88. In response to subsequent questions from the court, the defendant and his attorney indicated that they agreed with the prosecutor's summary of the evidence. Id. at 30–31. The court ultimately accepted Hayes' plea and adjudged him guilty of the offense charged in Count One of the indictment. Id. at 34.

Hayes appeared for sentencing on September 25, 2006. At that time, the court concluded that Hayes qualified as an armed career criminal. The court sentenced him to a term of imprisonment of 180 months, pursuant to 18 U.S.C. § 924(e). Hayes did not appeal his conviction or sentence.

On August 6, 2010, Hayes filed a pro se motion under 28 U.S.C. § 2255, claiming that he was improperly sentenced as an armed career criminal and that his defense attorney provided ineffective assistance. The court conditionally filed the motion and advised Hayes that the motion appeared to be untimely. After granting Hayes an opportunity to present additional argument on that issue, the court summarily dismissed the motion as untimely filed. United States v. Hayes, No. 7:06CR00002, 2010 U.S. Dist. LEXIS 103487 (W.D. Va. Sept. 30, 2010). The United States Court of Appeals for the Fourth Circuit denied a certificate of appealability and dismissed Hayes' appeal. United States v. Hayes, 408 F. App'x 758 (4th Cir. 2011).

On November 16, 2011, Hayes filed another motion that was docketed as a § 2255 motion, in which he sought dismissal of the indictment based on the Fourth Circuit's decision in United States v. Simmons, 649 F.3d 237 (4th Cir. 2011). The government moved to dismiss the motion on the basis that it was successive. The court granted the government's motion on March 30, 2012. United States v. Hayes, No. 7:06CR0002, 2012 U.S. Dist. LEXIS 46308 (W.D. Mar. 30, 2012).

On June 27, 2016, Hayes, through counsel, moved to vacate his sentence under § 2255 based on the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). Hayes simultaneously filed a motion to stay consideration of the petition pending a decision by the Fourth Circuit as to whether Hayes was authorized to file a successive § 2255 motion. On June 28, 2016, the Fourth Circuit denied Hayes' motion for authorization "on the ground that the holding in Johnson would entitle Hayes to no relief." In re Hayes, No. 16-9460 (4th Cir. June 28, 2016). That same day, Hayes moved to withdraw his § 2255 motion. The court granted the motion to withdraw on June 29, 2016.

3

On April 30, 2018, the government filed an omnibus motion for voluntary disclosure of grand jury and other materials in 55 closed criminal cases, pursuant to its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972). See United States v. Keegan, No. 7:14CR00029, Dkt. No. 32 (W.D. Va. Apr. 30, 2018). The motion sought permission to disclose potential impeachment information concerning Craig Frye, which had come to the government's attention between April and June of 2017. Id. The motion also requested that the Federal Public Defender's Office be appointed to represent each of the defendants identified by the government. The motion was granted on May 16, 2018.

Although Frye was the primary witness against Hayes, this case was not included in the initial list of 55 cases provided by the government. On September 20, 2018, the Federal Public Defender's Office notified the United States Attorney's Office that it believed disclosure may also be required in the instant case. The government concurred with that assessment. Accordingly, on September 24, 2018, the government moved for voluntary disclosure of the relevant materials and requested that the Federal Public Defender's Office be appointed to represent Hayes. The government's motion was granted on September 26, 2018.

On October 12, 2018, Hayes filed a pro se pleading that the court construed and docketed as a § 2255 motion. Relying on the potential impeachment information that had recently been released by the government, Hayes asserted that his conviction was unlawful. In accordance with the Supreme Court's decision in Castro v. United States, 540 U.S. 375 (2003), the court notified Hayes of its intention to treat his submission as a § 2255 motion and directed him to file an amended motion, if he elected to proceed under that statutory provision. The court also advised Hayes that his submission appeared to constitute a successive § 2255 motion.

On November 5, 2018, Hayes, through counsel, filed an amended § 2255 motion. Based on the newly disclosed information, Hayes argues that his conviction must be vacated on two grounds. First, Hayes claims that the government violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963), "by failing to disclose Frye's lengthy history of misconduct, as well as his prior arrest[,] . . . before Mr. Hayes pled guilty on July 10, 2006."[1] Am. § 2255 Mot. 22, Dkt. No. 116. Second, relying on the Fourth Circuit's decision in United States v. Fisher, 711 F.3d 460 (4th Cir. 2013), Hayes contends that "his guilty plea was involuntary" because he "pled guilty without the benefit of any of this important Giglio information."[2] Id. 13, 21. In support of these claims, Hayes cites to the following acts or incidents involving Frye that predated Hayes' plea of guilty:

- On December 14, 2004, a Vinton Police Department ("VPD") sergeant stated by electronic letter that he had been advised that Frye had elected to conduct drug investigations that reached beyond the scope of standard patrol level enforcement, and that, in doing so, Frye had circumvented the procedures and policies implemented by the VPD and created a potential "credibility" issue.

- On that same day, the sergeant was advised by a VPD detective that "Frye would most probably not respond to another counseling session . . . regarding . . . this type of street level

---

[1] In Brady v. Maryland, the Supreme Court held that the prosecution's failure to disclose evidence favorable to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. The Supreme Court has since held that the duty encompasses impeachment evidence as well as exculpatory evidence, Giglio, 405 U.S. at 154, and that it includes evidence that is "known only to police investigators and not to the prosecutor," Kyles v. Whitley, 514 U.S. 419, 438 (1995). Therefore, in order to comply with Brady, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Id. at 437.

[2] In United States v. Fisher, the Fourth Circuit held that a law enforcement officer's affirmative misrepresentation in a search warrant affidavit rendered the defendant's guilty plea involuntary under Brady v. United States, 397 U.S. 742 (1970), notwithstanding the fact that neither the prosecution nor defense counsel knew about the officer's misconduct at the time the defendant entered his plea. Fisher, 711 F.3d at 462, 467.

proactive drug enforcement," which the detective "warned could result in 'tainted' drug cases."

- On November 23, 2005, the then-chief of the VPD advised Frye in writing that he intended to take disciplinary action against Frye for racially insensitive and inappropriate remarks regarding African-Americans that were allegedly made by Frye on November 14, 2005 in the presence of three witnesses.

- On December 5, 2015, Frye was ordered to undergo mandatory counseling for the racially insensitive remarks.

- On January 25, 2006, Frye composed a memorandum to his personnel file in which he admitted to having surreptitiously accessed the computer of another officer and changed the officer's home page to a homosexual website.

- On September 15, 2017, a new chief of police stated in an internal affairs memorandum that Frye had been arrested and charged with felony larceny prior to being employed by the Town of Vinton as a police officer, and that the charge was later dismissed and expunged.

Id. 11–13. In response to the previous Castro notice, Hayes also contends that the current motion should not be deemed successive, and that the motion was timely filed within one year of discovering the evidence at issue.

By order entered November 9, 2018, the government was directed to respond to the defendant's arguments on the issue of whether the pending motion is successive for purposes of § 2255(h). The government subsequently filed a response in which it argues that the motion must be dismissed as successive. The defendant has since filed a reply brief on this issue. Although Hayes, through counsel, initially requested oral argument, the parties have since agreed for the matter to be decided on the briefs.

## Discussion

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal district court may consider a "second or successive" § 2255 motion only upon certification from the appropriate court of appeals that the motion meets certain criteria. 28 U.S.C. § 2255(h). Specifically, a successive § 2255 motion must be certified as provided in 28 U.S.C. § 2244 to contain:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Id. "In the absence of pre-filing authorization . . . , the district court lacks jurisdiction to hear a successive § 2255 motion." United States v. Joy, 585 F. App'x 33, 34 (4th Cir. 2014) (citing 28 U.S.C. § 2244(b)(3)).

The phrase "second or successive" is not defined by the AEDPA. The Supreme Court has recognized that the phrase is not "self-defining" and that it does not encompass all habeas corpus petitions filed second or successively in time. Panetti v. Quarterman, 551 U.S. 930, 943–44 (2007); see also In re Williams, 444 F.3d 233, 235 (4th Cir. 2006) (observing that "not every numerically second petition is a 'second or successive' petition within the meaning of the AEDPA"). Instead, the statutory phrase is a "term of art," Slack v. McDaniel, 529 U.S. 473, 486 (2000), which takes its full meaning from existing caselaw, including decisions predating the enactment of the AEDPA. Panetti, 551 U.S. at 943–44.

7

As indicated above, Hayes previously filed a § 2255 motion that was dismissed as untimely. Nevertheless, Hayes argues that the pending § 2255 motion is not successive for two reasons: (1) the earlier motion was not adjudicated on the merits; and (2) the current motion is based on newly discovered facts that were not known at the time of the previous motion. The court will address each argument in turn.

Hayes first argues that his initial § 2255 motion should not count against him under § 2255(h) because it was dismissed as untimely and not considered on the merits. This argument, however, is contrary to existing law. It is well-settled that the dismissal of a claim as untimely filed under the applicable statute of limitations is a disposition on the merits. See Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, . . . any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."); Shoup v. Bell & Howell Co., 872 F.2d 1178, 1180 (4th Cir. 1989) ("The plain language of [Rule 41(b)] indicates that the dismissal of plaintiffs' Pennsylvania action on statute of limitations grounds is an adjudication on the merits."). The same is true when a § 2255 motion or other habeas petition is dismissed as untimely. Stapleton v. United States, 392 F. Supp. 2d 754, 756 (W.D. Va. 2005); see also In re Rains, 659 F.3d 1274, 1275 (10th Cir. 2011) ("The dismissal of Mr. Rains's first habeas petition as time-barred was a decision on the merits, and any later habeas petition challenging the same conviction is second or successive and is subject to the AEDPA requirements."); McNabb v. Yates, 576 F.3d 1028, 1029 (9th Cir. 2009) ("We hold that the dismissal of a habeas petition as untimely constitutes a disposition on the merits and that a further petition challenging the same conviction would be 'second or successive' for purposes of 28 U.S.C. § 2244(b)."); Villanueva

v. United States, 346 F.3d 55, 58 (2d Cir. 2003) ("We ... hold that a first § 2255 petition that has properly been dismissed as time-barred under AEDPA has been adjudicated on the merits, such that authorization from this court is required before filing a second or successive § 2255 petition."). Accordingly, Hayes' first § 2255 motion "counts" for purposes of determining whether subsequent motions are successive. Altman v. Benik, 337 F.3d 764, 765 (7th Cir. 2003).

Hayes also contends that his current § 2255 motion is not successive because it "relies on new facts" that were not known to him and therefore could not have been raised at the time he filed his earlier motion. Def.'s Reply Br. 2, Dkt. No. 124. While this contention is arguably more persuasive, the court is constrained to conclude that it is also without merit.

Both the Supreme Court and the Fourth Circuit have recognized a small subset of claims that may be raised in a subsequent habeas petition or § 2255 motion without being categorized as successive. Panetti, 551 U.S. at 942–47; United States v. Hairston, 754 F.3d 258, 262 (4th Cir. 2014). Among that group are claims that were not yet "ripe" when the original petition was filed because of a nonexistent factual predicate. Panetti, 551 U.S. at 945. In Panetti, the Supreme Court considered how to classify a death row inmate's second-in-time habeas petition—brought years after his initial petition was denied—which asserted, for the first time, that he was incompetent to be executed under Ford v. Wainwright, 477 U.S. 399 (1986). Id. at 938, 942. The Court ultimately held that the petition was not a "second or successive" application for purposes of the AEDPA, since "Ford-based incompetency claims, as a general matter, are not ripe until after the time has run to file a federal habeas petition," and oftentimes not until execution is imminent. Id. at 945. The Court determined that requiring "prisoners to file premature claims, particularly when many of these claims will not be colorable even at a later

9

date," would not conserve judicial resources or advance any other goals of the AEDPA. Id. at 946.

Consistent with the Supreme Court's reasoning in Panetti, the Fourth Circuit has held that a numerically second § 2255 motion should not be considered "second or successive" pursuant to § 2255(h) when the factual basis for the motion did not come into existence until after a prior motion was filed. Hairston, 754 F.3d at 262. In Hairston, the defendant filed a § 2255 motion within a year of his sentencing, which was denied by the district court. Id. at 259. Eight years later, a state court vacated a prior conviction that had affected the defendant's criminal history category at sentencing. Id. The defendant then filed a second § 2255 motion seeking to be resentenced for his federal offense, which the district court dismissed as an unauthorized second or successive motion. Id. In reversing the district court's decision, the Fourth Circuit emphasized that "the facts relied on by the movant seeking resentencing did not exist when the numerically first motion was filed and adjudicated." Id. at 262. Consequently, the Court held that the defendant's claim was "unripe" at the time his numerically first motion was filed, and that his second motion was therefore not "successive" within the meaning of the AEDPA. Id.

Upon review of the amended § 2255 motion and existing caselaw, the court concludes that neither of Hayes' claims fall within the exception to the "second or successive" application bar recognized in Panetti and Hairston. Turning first to the claim under Brady v. Maryland, courts have held that such claims ripen at the time the constitutional violation occurs, even if the petitioner is unaware of the violation at that time. See, e.g., In re Wogenstahl, 902 F.3d 621, 627–28 (6th Cir. 2018) (rejecting petitioner's argument that his habeas petition was not successive and explaining that petitioner's "claims were not unripe at the time he filed his initial

petition because the purported Brady violations . . . had already occurred when he filed his petition, although [petitioner] was unaware of these facts"). As the Ninth Circuit recently explained:

> In the case of a Brady claim, the violation occurs at the time the [prosecution] should have disclosed the exculpatory evidence—i.e. before trial. If the factual predicate accrues before a petitioner brings an initial federal habeas petition, then any subsequent federal petition raising a claim based on that factual predicate is second or successive and is governed by § 2244(b).

Brown v. Muniz, 889 F.3d 661, 672–73 (9th Cir. 2018) (footnote omitted). The Court emphasized that this conclusion was compelled by the plain text of § 2244(b), the Supreme Court's decision in Panetti, and its own subsequent decision in United States v. Buenrostro, 638 F.3d 720 (9th Cir. 2011).[3] Id. at 673. The Court also noted that its determination aligned the Ninth Circuit with its "brethren in the Fourth, Tenth, and Eleventh Circuits." Id. at 673 n.9 (citing, among other cases, Evans v. Smith, 220 F.3d 306, 323 (4th Cir. 2000)).

In the Fourth Circuit case cited in Brown, the petitioner attempted to raise a new Brady claim without meeting the standards governing the filing of successive petitions prescribed in § 2244(b). Evans, 220 F.3d at 322. The petitioner argued that he was "not required to meet the

---

[3] Buenrostro involved a defendant serving a life sentence for federal drug crimes. 638 F.3d at 721. After the district court denied his initial § 2255 motion, the defendant discovered that his trial attorney had rejected a plea deal that would have limited his sentence to fourteen years. Id. The district court construed a subsequent motion asserting a claim of ineffective assistance as a second or successive motion under § 2255. Id. In affirming the district court's decision, the Ninth Circuit distinguished Panetti and held that the defendant's ineffective assistance claim was ripe at the time of his first § 2255 motion, since the alleged constitutional error had already occurred. Id. at 725–26. Although the defendant was unaware of the basis for the claim at that time, the Court determined that § 2255 addresses this precise situation. Id. The Court explained that "the words of § 2255(h) indicate Congress' clear intent to prohibit [appellate courts] from certifying second-in-time claims, ripe at the time of a prisoner's first § 2255 proceeding but not discovered until afterward," unless the defendant satisfies the statutory requirements. Id.

prerequisites for a second or successive petition in order to bring his Brady claim because he allegedly could not discover the Brady claim until after the [initial] habeas petition had already been filed." Id. at 323. The Fourth Circuit rejected the petitioner's argument, emphasizing that "the standards that Congress has established for the filing of second or successive petitions account for precisely the type of situation" described by the petitioner—namely, a claim based on newly discovered evidence. Id. (citing 28 U.S.C. § 2244(b)(2)). In affirming the denial of the petitioner's request to stay and amend his original petition, the Fourth Circuit reasoned that "[s]uch action would have allowed Evans to file what would essentially be a second or successive petition while evading the prerequisites that Congress has established for the filing of such petitions." Id. at 322.

Despite the government's reliance on Evans, Hayes does not address the decision in his reply brief. Instead, Hayes relies primarily on Hairston and Panetti to assert that his newly discovered claims should not be deemed successive for purposes of the AEDPA. However, since Hairston and Panetti were decided, courts have "distinguished between petitions containing claims, the factual predicate of which came into being after the first habeas petition—such as the mental incompetency claim in Panetti—and those containing claims that were ripe at the conclusion of a first habeas proceeding but were not discovered until afterward." Gage v. Chappell, 793 F.3d 1159, 1165 (9th Cir. 2015); see also Hicks v. Clarke, No. 3:15CV00405, 2016 U.S. Dist. LEXIS 137558, at *24 (E.D. Va. Sept. 30, 2016) (distinguishing Hairston and emphasizing that it involved "entirely new facts developed after the first-in-time petition had been filed, not facts that had previously existed but were newly discovered by [the petitioner]"), appeal dismissed, 682 F. App'x 253 (4th Cir. 2017). Courts have consistently held that Brady

claims similar to those raised here fall within the latter category, and that petitions asserting such claims qualify as second or successive under the AEDPA. See Brown, 889 F.3d at 672–673 & n.9 (collecting cases); see also Hicks, 2016 U.S. Dist. LEXIS 137558, at *25 (emphasizing that because the petitioner "does not bring newly developed facts, but instead raises newly discovered evidence, under Evans and pursuant to § 2244(b)(2)(B), he must now seek permission from the Fourth Circuit to bring a petition based on his Brady claim."). Indeed, as one appellate judge recently emphasized, there is currently no circuit split over the issue of whether Panetti made the second or successive application requirements inapplicable to Brady claims. Jimenez v. Sec'y, Fla. Dep't of Corr., No. 18-15128, 2018 U.S. App. LEXIS 35093, at *8 (11th Cir. Dec. 13, 2018) (Carnes, C.J., concurring). Instead, all of the circuits "that have decided the issue since Panetti agree . . . that the second or successive application requirements do apply to Brady and Giglio claims," even if a petitioner was unaware of the facts giving rise to the claims at the time he filed an earlier petition. Id. (citing post-Panetti decisions from the Fifth, Sixth, Ninth, and Eleventh Circuits, as well as the Fourth Circuit's pre-Panetti decision in Evans, supra).

Against this backdrop, the court is compelled to conclude that Hayes' Brady claim is subject to the successive motion requirements set forth in § 2255(h). Hayes alleges that "the Vinton Police Department was aware of Frye's misconduct before . . . Hayes pled guilty," and that "the government committed a Brady violation by failing to disclose [the information known to the Vinton Police Department]" prior to his plea hearing on July 10, 2006. Am. § 2255 Mot. 22, 24. It follows that the factual predicate underlying Hayes' Brady claim—the failure to disclose potentially exculpatory or impeachment evidence—accrued before Hayes filed his first § 2255 motion in 2010, even though Hayes was unaware of it. Thus, unlike the claims asserted

in Panetti and Hairston, Hayes' Brady claim is not based on facts that did not exist at the time of his initial § 2255 motion. Instead, it "relies on facts that he only recently discovered." In re Wogenstahl, 902 F.3d at 628. Consistent with the weight of authority, the court believes that this is "precisely the type of situation" that § 2255(h) was designed to address. Evans, 220 F.3d at 323; see also Buenrostro, 638 F.3d at 725 (emphasizing that "§ 2255(h)(1) contains an express statutory standard for dealing with 'second or successive' claims based on 'newly discovered evidence'") (additional internal quotation marks omitted).

In reaching this decision, the court recognizes that the instant case is somewhat unique in that the United States Attorney's Office apparently did not become aware of the information at issue until 2017, well after Hayes' initial § 2255 motion was filed. However, as Hayes emphasizes in his current motion, "Brady applies even if the United States Attorney's Office was not aware of [exculpatory or impeachment evidence] before [the defendant] pleaded guilty," since "Brady encompasses evidence 'known only to police investigators and not to the prosecutor.'" Am. § 2255 Mot. 23 (quoting Kyles v. Whitley, 514 U.S. 429, 438 (1995)); see also id. at 23–24 (emphasizing that "[b]ecause the Vinton Police Department was aware of Frye's misconduct before Mr. Hayes pled guilty, the government had an obligation to disclose the information"). Because a Brady violation occurs at the time the exculpatory evidence should have been disclosed (i.e., before a defendant goes to trial or pleads guilty), courts have held that Brady claims were barred as successive in cases where similar information implicating police officers was not provided by a police department until after an initial habeas petition was filed.

For instance, in Brown v. Muniz, the San Francisco District Attorney's ("DA") Office issued letters to the San Francisco County Public Defender's Office and the San Francisco Bar

14

Association's Indigent Defense Administrator between October 2010 and May 2011, advising that the San Francisco Police Department had informed the DA of material in certain police officers' personnel files that may be subject to disclosure under Brady. 889 F.3d at 665–66. The letters implicated three officers who were in some way related to petitioner Gregory Brown's case and indicated that the material at issue dated back to the 1980s, long before Brown went to trial. Id. at 666. After becoming aware of the information, Brown filed a second-in-time petition for writ of habeas corpus under 28 U.S.C. § 2254, alleging that the information constituted materially exculpatory Brady evidence. Id. As indicated above, the Ninth Circuit concluded that "Brown's Brady claim was ripe at the time of his first habeas petition because the alleged constitutional violation—failure to turn over the [information implicating the three officers]—occurred before Brown's trial even began." Id. at 674. Thus, notwithstanding the fact that the evidence at issue did not come to light until more than a decade after Brown's first habeas petition was denied on the merits, the Court held that the claim was successive and that Brown could pursue it only if he satisfied the gatekeeping requirements of § 2244(b).

The court is convinced that the same outcome is required here. Hayes claims that the Vinton Police Department was aware of Frye's prior arrest and instances of professional misconduct before Hayes pled guilty, that the information implicating Frye was potential impeachment evidence, and that the failure to disclose the evidence prior to the entry of his guilty plea violated his due process rights under Brady. Consistent with Brown and other decisions cited above, the court concludes that Hayes' Brady claim was ripe at the time of his first § 2255 motion, and that he is entitled to pursue it only if he obtains authorization from the Fourth Circuit under § 2255(h).

The court reaches the same result with respect to Hayes' claim that his "guilty plea [was] involuntary because it was predicated on impermissible government conduct that was material to his decision to plead guilty." Am. § 2255 Mot. 21; see also id. at 13 (asserting that "his guilty plea was voluntary" because he "pled guilty without the benefit of any of this important Giglio information"). Because Hayes maintains that pre-plea misconduct rendered his guilty plea involuntary, the court concludes that this claim was also ripe at the time of his first § 2255 motion. As discussed above, whether a claim was ripe under the AEDPA "turns on whether the factual predicate existed, not whether the petitioner knew it existed at the time of his initial habeas petition." Brown, 889 F.3d at 674 (emphasis in original). Since the factual predicate underlying Hayes' involuntary plea claim existed at the time he filed his first motion to vacate, this claim is also subject to the requirements for second or successive § 2255 motions. Accordingly, Hayes must obtain authorization from the Fourth Circuit before this court may consider it.

In closing, the court emphasizes that its decision here is confined to the narrow issue of whether Hayes' current motion is barred by the restrictions on second or successive motions imposed by § 2255(h). The decision should not be read as expressing or implying any view on the merits of either claim. Unless and until the Fourth Circuit authorizes the filing of a successive motion, this court does not have jurisdiction to consider the new claims on the merits. While the court recognizes that Hayes is nearing the end of his federal sentence, the court cannot short-circuit the AEDPA's gatekeeping requirements.

## Conclusion

For the reasons stated, the court concludes that Hayes' current motion is successive for purposes of § 2255(h). Consequently, the court is not authorized to consider the motion absent certification by the Fourth Circuit. Because Hayes has not obtained the requisite certification, the court must dismiss the motion without prejudice for lack of jurisdiction. An appropriate order will issue this day.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

DATED: This 4th day of January, 2019.

_____
Senior United States District Judge